OSCN Found Document:Question Submitted by: The Honorable Stan May, Oklahoma House of Representatives, District 80

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Stan May, Oklahoma House of Representatives, District 80
2024 OK AG 13
Decided: 09/19/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 13, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Can a federally insured credit union chartered under the laws of the State of Oklahoma qualify as a low-income designated credit union if it meets the criteria as determined by the National Credit Union Administration?
I.
SUMMARY
¶1 Yes. Both Oklahoma and federal law confirm that a federally insured credit union chartered under Oklahoma law is authorized to obtain a low-income designation in the same manner as a federal credit union.
¶2 First, Oklahoma law authorizes state credit unions to obtain a low-income designation. Although Oklahoma credit union laws do not directly speak to obtaining a low-income designation, title 6 section 2023 authorizes a federally insured state credit union to "exercise any of the powers of a federally chartered credit union doing business in this state" unless otherwise prohibited by law. 6 O.S.2021, § 2023. The plain and expansive language of this "parity" or "wild card" provision encompasses the ability to obtain a low-income designation, which is a benefit otherwise available to federal credit unions. In fact, thirty-two of Oklahoma's forty-five federal credit unions currently have and are presumably exercising the benefits of a low-income designation.[1] This conclusion, therefore, gives effect to the legislative intent for the parity provision to "equalize and maintain the quality of competition between state and federal credit unions." 6 O.S.2021, § 2023. Nothing elsewhere in Oklahoma law prohibits state credit unions from exercising this power in the same manner as federal credit unions.
¶3 Second, federal law authorizes state credit unions to obtain a low-income designation. Although federal statutes do not directly speak to state credit unions obtaining a low-income designation, federal regulations implicitly sanction state credit unions' ability to obtain a low-income designation. See 12 C.F.R. §§ 701.34(a)(2), 741.204(b) (2022).
II.
BACKGROUND
A. The Legal Background of Credit Unions.
¶4 A credit union is a "cooperative non-profit" financial institution "incorporated for the purpose of promoting thrift among its members[] and creating a source of credit . . . at legitimate rates of interest for . . . productive purposes." See 12 U.S.C. § 1752(1); 6 O.S.2021, § 2001(1). A credit union can obtain its charter under state or federal law, generally subjecting the credit union to either state or federal laws, regulations, and authority.
¶5 In 1909, the first United States credit union opened its doors, and the first comprehensive credit union law was enacted by the State of Massachusetts. See NCUA, Historical Timeline, https://ncua.gov/about/historical-timeline (last visited Sept. 18, 2024). By 1934, Congress formally recognized federal credit unions through the enactment of the Federal Credit Union Act ("Federal Act"). See Federal Credit Union Act, Pub. L. No. 73-750, 48 Stat. 1216 (1934). Not long after, in 1941, the Oklahoma Legislature enacted similar legislation formally recognizing state credit unions. See 1941 Okla. Sess. Laws ch. 16, § 1. By 1970, Congress created the National Credit Union Administration ("NCUA") to govern federal credit unions and extended federal share insurance to all credit unions. See Federal Credit Union Act, ch. 206, sec. 3, §3(a), 84 Stat. 49, 49-50 (1970); Federal Credit Union Act, ch. 468, sec. 3, § 201(a), 84 Stat. 994 (1970). Although state credit unions remain governed principally by state law, certain portions of the Federal Act now apply to state credit unions receiving the benefit of federal share insurance. See 12 U.S.C. §§ 1781--1790e.
¶6 In 1977, Congress amended the Federal Act to expand the powers of federal credit unions considerably. See Federal Credit Union Act, ch. 22, sec. 302-304, §§ 107 (5&7) and 114, 91 Stat. 49, 49-52 (1977). Shortly thereafter, the Oklahoma Legislature enacted title 6, section 2023, which authorized federally insured state credit unions to exercise any of the powers of a federally chartered credit union. See Senate Bill 191, 1977 Okla. Sess. Laws ch. 99. The Oklahoma Legislature and State Credit Union Board ("State Board") have since enacted laws and regulations further incorporating privileges of federal credit unions. See, e.g., 6 O.S.2021, § 2006(A)(5)(i) (allowing state credit unions to "participate in any guaranteed loan program of the federal government or of this state"), § 2006(A)(8)(b)(10) (allowing state credit unions to invest funds according to "any obligations or securities authorized for investment by federal credit unions"); OKLA. ADMIN. CODE § 180:10-5-5 ("expressly authoriz[ing]" state credit unions "to offer such other instruments and accounts as shall be approved by the NCUA for federally chartered credit unions").
B. The Low-Income Designation
¶7 The Federal Act provides several exemptions or benefits to credit unions serving predominately "low-income" members. See, e.g., 12 U.S.C. §§ 1757(6), 1757a(b)(2), 1772c-1, 1790d.[2] First, it provides an exemption from the aggregate member business loan limit imposed on insured credit unions. See 12 U.S.C. § 1757a(b)(2)(A). Insured credit unions are otherwise prohibited from making a member business loan that results in a total amount of outstanding loans equal to more than either 1.75 times the actual net worth of the credit union or 1.75 times the minimum net worth required to be well capitalized under the Federal Act. Second, it provides eligibility to participate in the Community Development Revolving Loan Fund for Credit Unions, which awards grants and low-interest loans. See 12 U.S.C. §§ 1772c-1; 4702(17); 12 C.F.R. § 705.2 (2020). Third, it expands the credit union's ability to accept non-member deposits from any source. See 12 U.S.C. § 1757(6). Fourth, it allows the credit union to offer secondary capital accounts and include those accounts in the insured credit union's net worth. See id. § 1790d(o)(2)(C).
¶8 Regulations promulgated by the NCUA demonstrate when credit unions qualify for the "low-income" designation. See 12 C.F.R. § 701.34(a)(2) (2022). While this regulation explains how federal credit unions can receive and maintain the low-income designation, it is silent as to state credit unions. See id. § 701.34(a)(1), (3--4). Nevertheless, the regulations elsewhere provide that a federally insured credit union must "[o]btain a low-income designation in order to accept nonmember accounts, other than from public units or other credit unions, provided it has the authority to accept such accounts under state law." 12 C.F.R. § 741.204(b) (2022).[3] The regulation further details that "[t]he state regulator shall make the low-income designation with the concurrence of NCUA. The designation will be made and reviewed by the state regulator on the same basis as that provided in [section] 701.34(a) of this chapter for federal credit unions." Id.
¶9 Oklahoma laws and regulations governing state credit unions do not reference the phrase "low[-]income" and do not set forth the process for state credit unions to obtain a low-income designation. However, the Oklahoma Administrative Code provides that "[t]he [Oklahoma State Banking] Department may develop forms for use by credit unions in conducting various activities and requirements and may accept, in lieu of its own forms, forms prescribed by the NCUA relating to the same or similar subject matter." OKLA. ADMIN. CODE § 180:10-1-3; see also 6 O.S.2021, § 2001.1(C) ("The State Banking Department shall provide such clerical, technical and legal assistance as the State Credit Union Board may require.").
C. Oklahoma Credit Unions
¶10 In or around 1923, the first credit union in Oklahoma was formed.[4] As of late 2023, approximately fifty-five credit unions are headquartered in Oklahoma. See NCUA Data. Only ten of those credit unions obtained their charters from the State of Oklahoma.[5] Thus, approximately 81% of Oklahoma credit unions are federally chartered. The total assets of the state credit unions equal approximately $1.34 billion, while the total assets of the federal credit unions in Oklahoma equal approximately $19.47 billion. See NCUA Data. None of the state credit unions hold a low-income designation, but thirty-two out of forty-five federal credit unions hold a low-income designation--including the two largest credit unions in Oklahoma. Id. The total assets of the low-income designated federal credit unions equal approximately $16.3 billion. Id.
III.
DISCUSSION
¶11 To answer your question, we must determine: (1) whether Oklahoma law authorizes a state credit union to qualify as a low-income credit union, and (2) whether federal law authorizes a state credit union to qualify as a low-income credit union. We begin with Oklahoma law because a credit union chartered under the laws of the State of Oklahoma is principally governed by Oklahoma law. See 6 O.S.2021, § 2001-2027. Thus, authority must come from Oklahoma law for a state credit union to act--including upon a privilege or benefit provided for in the Federal Act and otherwise available to federal credit unions.
A. Oklahoma law authorizes state credit unions to obtain a low-income designation. 
¶12 Although Oklahoma law does not reference the phrase "low[-]income" and does not clarify the process for obtaining a low-income designation, the Oklahoma Legislature has provided that:
[a] credit union chartered under the laws of the State of Oklahoma, the member accounts of which are insured under Title II of the Federal Credit Union Act, may exercise any of the powers of a federally chartered credit union doing business in this state, until otherwise provided by the Legislature; and provided that the State Credit Union Board may by rule prohibit the exercise of any such power . . . .
6 O.S.2021, § 2023. This "parity" or "wild card" provision expressly authorizes a state credit union to exercise the same powers as a federal credit union unless otherwise prohibited by the Legislature through statute or the State Board through regulation. Thus, a state credit union can obtain the low-income designation if the low-income designation (1) falls within the scope of the parity provision, and (2) is not otherwise prohibited by Oklahoma law.

1. The low-income designation falls within the scope of the parity provision of 6 O.S.2021, § 2023.

¶13 To determine whether the low-income designation falls within the scope of the parity provision, 6 O.S.2021, § 2023, we begin with the plain text. See Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 11, 230 P.3d 853, 859 (explaining that legislative "intent is first divined from the language of a statute[,]" and that "[i]f a statute is plain and unambiguous, it . . . will receive the interpretation and effect its language dictates"). The relevant portion of the parity provision provides that a state credit union "may exercise any of the powers of a federally chartered credit union doing business in this state. . . ." 6 O.S.2021, § 2023.
¶14 The words and phrases used in the parity provision convey an expansive scope. For example, the ordinary meaning of "power" is "[t]he right, ability, authority, or faculty of doing something[,]" or "an ability on the part of a person to produce a change in a given legal relation by doing or not doing a given act." Power, BLACK'S LAW DICTIONARY (5th ed. 1979); see also Power, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. The ability to act or not act; . . . 3. The legal right or authorization to act or not act"). Thus, the term "power" is broad enough to encompass any action, inaction, right, ability, authority, privilege, benefit, liability, or license. Similarly, "to exercise a right or power is to do something which it enables the holder to do." Exercise, BLACK'S LAW DICTIONARY (5th ed. 1979). Thus, to "exercise any of the powers of a federally chartered credit union" is to make use of any right, ability, or authority of a federal credit union. 6 O.S.2021, § 2023. The inclusion of the word "any" erases all doubt that the scope of the parity provision is broad: intended to encompass all such rights, abilities, or authorities of a federal credit union. See State ex rel. Porter v. Ferrell, 1998 OK 41, ¶ 9, 959 P.2d 576, 578 ("The use of the word 'any' within a statute is equivalent and has the force of 'every' and 'all'." (citation and quotations omitted)). 
¶15 Here, federal credit unions have the power to obtain a low-income designation and to exercise the benefits that flow therefrom. See supra Section II(B). That power--obtaining a low-income designation and exercising benefits that flow therefrom--plainly falls within the scope of the broad language of the parity provision. Accordingly, the parity provision authorizes a state credit union to obtain a low-income designation and exercise the same power and benefits that flow therefrom unless otherwise prohibited by Oklahoma law.
¶16 Even if the language of the parity provision were ambiguous, "[t]he fundamental rule of statutory construction is to ascertain and give effect to legislative intent." Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 11, 230 P.3d at 859. Here, that legislative intent is plainly expressed in the text of the parity provision: to "equalize and maintain the quality of competition between state and federal credit unions." 6 O.S.2021, § 2023; see also 1999 OK AG 72, ¶ 5 (observing "a legislative intent to place state and federally chartered credit unions on an equal competitive frame"). The legislative history also confirms the Legislature's intent for section 2023 to place state credit unions on an even playing field with federal credit unions. After all, section 2023 was enacted only a month after Congress considerably expanded the powers of federal credit unions. Compare Federal Credit Union Act, ch. 22, sec. 302--04, §§ 107 (5&7) and 114, 91 Stat. 49, 49-52 (1977), with Senate Bill 191, 1977 Okla. Sess. Laws ch. 99.
¶17 The conclusion that the parity provision authorizes state credit unions to obtain a low-income designation is the only one that gives effect to this clear legislative intent. Today, more than thirty federal credit unions have obtained and are presumably exercising the benefits of a low-income designation in Oklahoma. See supra Section II(C). Those low-income designated federal credit unions hold total assets exceeding $16.3 billion and control 79% of the market for Oklahoma credit unions--compared to $1.3 billion and 6% market share for state credit unions. See id. To interpret the parity provision as precluding state credit unions from obtaining the same low-income designation as these federal credit unions would contravene the legislative intent of 6 O.S.2021, § 2023. Thus, the low-income designation falls within the scope of the parity provision, 6 O.S.2021, § 2023.

2. The low-income designation is not otherwise prohibited by statute or regulation.

¶18 Having determined that the low-income designation falls within the scope of the parity provision, the next question is whether the low-income designation is otherwise prohibited by Oklahoma law. Again, "[t]he authority of state[-]chartered credit unions to exercise the same powers as federal credit unions under 6 O.S. 2023 (1991) is limited in two ways: (1) If otherwise provided by the Legislature; and (2) If the state credit union board prohibits it by rule." 1999 OK AG 72, ¶ 6.
¶19 No such limitation can be found here. Nothing within Oklahoma statutes or regulations prohibits a state credit union from obtaining a low-income designation. Oklahoma statutes and regulations are silent on whether or how a low-income designation can be obtained by a state credit union. This distinguishes the question presented here from the one presented in the 1999 Attorney General Opinion, which involved a conflict between a more restrictive Oklahoma law and a more expansive federal law on credit union membership. Id. ¶ 4.[6]

¶20 Therefore, because nothing in Oklahoma law prohibits a state credit union from obtaining a low-income designation, the parity provision of 6 O.S.2021, § 2023 controls. A state credit union can obtain a low-income designation in the same manner as a federal credit union.
B. Federal law authorizes state credit unions to obtain a low-income designation. 
¶21 Having determined that Oklahoma law authorizes a state credit union to obtain a low-income designation, we turn to federal law. As an initial matter, there is nothing within the text of the Federal Act that speaks directly to whether a state can obtain a low-income designation or the benefits that flow therefrom. See, e.g., 12 USC §§ 1757(6), 1757a(b)(2), 1772c-1, 1790d. At the same time, nothing within the text of the Federal Act limits or prohibits a state credit union from obtaining a low-income designation. Moreover, two of the statutes establishing benefits from the low-income designation relate to insured credit unions, which includes certain state credit unions. See 12 U.S.C. §§ 1757a(a)--(b)(2)(A) (aggregate member business loan limit), 1790d (o)(2)(C) (secondary capital accounts); see also 12 U.S.C. § 1781(a) (eligibility of state credit unions for share insurance); NCUA Data (listing federally-insured state credit unions).
[7] Similarly, eligibility to participate in the Community Development Revolving Loan Fund for Credit Unions is not limited by statute to any one type of credit union. See 12 U.S.C. § 1772c-1; see also 12 C.F.R. § 705.2 (defining a "Qualifying Credit Union" as one "with a current low-income designation . . . ."). Thus, the broad and unqualified language used in these statutes contemplates a state credit union's eligibility for a low-income designation.
¶22 Federal regulations specifically sanction state credit unions obtaining a low-income designation by providing that a federally insured credit union must "[o]btain a low-income designation in order to accept nonmember accounts, other than from public units or other credit unions, provided it has the authority to accept such accounts under state law." 12 C.F.R. § 741.204(b). This regulation further provides that "[t]he state regulator shall make the low-income designation with the concurrence of NCUA. The designation will be made and reviewed by the state regulator on the same basis as that provided in § 701.34(a) of this chapter for federal credit unions." Id. The other relevant regulation that defines the low-income status does not limit or prohibit a state credit union from qualifying. See 12 C.F.R. § 701.34(a)(2). Thus, federal regulations authorize a state credit union to obtain a low-income designation.
¶23 Although not necessarily authoritative, various NCUA publications also demonstrate the agency's view that federal law authorizes state credit unions to obtain a low-income designation. See, e.g., NCUA, Low-Income Designation, https://ncua.gov/support-services/credit-union-resources-expansion/field-membership-expansion/low-income-credit-union-designation (last accessed Sept. 18, 2024) ("All federally insured credit unions that meet the eligibility criteria can receive the low-income designation. However, some state-chartered credit unions may not be afforded all the designation's benefits."); NCUA, Examiner's Guide at 23-4, https://publishedguides.ncua.gov/examiner/Content/PDFs/Print%20EG/23-LICUs.pdf (last accessed Sept. 18, 2024) ("In the event that state law does not provide for a low-income designation, the regional director would approve the designation after obtaining concurrence of the [state supervisory authority]. The possibility exists that state laws would prohibit certain activities, such as acceptance of nonmember accounts."); 78 Fed. Reg. 4030-1 (Jan. 18, 2013) (describing that "commenters urged NCUA to further clarify the process for designating state-chartered, low-income credit unions as LICUs and to work with state regulators to ensure the state designation process is comparable to the federal process[,]" which the NCUA agreed would be "worthwhile and would benefit state-chartered credit unions and their members."). This view has been confirmed through NCUA granting low-income designations to hundreds of federally insured state credit unions from across forty states. See NCUA Data.
[8] In sum, the evidence overwhelmingly confirms the conclusion that federal law permits a state credit union to obtain a low-income designation in the same manner as a federal credit union.
¶24 It is, therefore, the official Opinion of the Attorney General that:

A federally insured credit union chartered under the laws of the State of Oklahoma can qualify as a low-income designated credit union if it meets the criteria as determined by the National Credit Union Administration.
 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
GARRY M. GASKINS, II
[9]
SOLICITOR GENERAL
FOOTNOTES
[1] National Credit Union Administration, List of Active Federally Insured Credit Unions, https://ncua.gov/files/publications/analysis/federally-insured-credit-union-list-december-2023.zip (last visited Sept. 18, 2024) [hereinafter "NCUA Data"].
[2] Congress appears to have added the first reference to a "low-income" designation to the Federal Act in the 1977 amendments. See Federal Credit Union Act, ch. 22, secs. 303, § 107 (7), 91 Stat. 51 (codified as amended at 12 U.S.C. § 1757(6))
[3] This regulation can be found in Part 741, Requirements for Insurance, Subpart B, which relates to "Regulations Codified Elsewhere in NCUA's Regulations as Applying to Federal Credit Unions that Also Apply to Federally Insured State-Chartered Credit Unions."
[4] See First Okla. Fed. Credit Union, Our History, https://www.firstokfcu.org/about/history-of-first-oklahoma-federal-credit-union (last visited Sept. 18, 2024).
[5] NCUA Data; see also Okla. Banking Dep't, Credit Unions, https://oklahoma.gov/banking/institutions-lists/credit-unions.html (last visited Sept. 18, 2024).
[6] The 1999 Opinion concerned whether Oklahoma state-chartered credit unions could have community-based membership like federal credit unions. Id. ¶ 0. Oklahoma's state credit union statutes at the time expressly limited membership "to groups having a common bond of occupation or association." Id. ¶ 4 (quoting 6 O.S.1991 § 2007). Therefore, "community based" groups that did not share a common bond of occupation or association were prohibited by an express provision of Oklahoma law. Id. ¶¶ 5--8.
[7] In fact, all of the Oklahoma state credit unions are federally insured. See supra Section II(C).
[8] Specifically, as of December 2023, NCUA had granted low-income designations to 725 federally insured state credit unions. NCUA Data supra n. 1.
[9] Former Assistant Solicitor General Audrey Weaver prepared an initial draft of this Opinion. She departed the office for other employment prior to issuance of this opinion.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1999 OK AG 72, 
Question Submitted by: The Honorable Stratton Taylor, President Pro Tempore, Oklahoma State Senate
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed at Length

 
1998 OK 41, 959 P.2d 576, 69 OBJ 1884, 
STATE ex rel. PORTER v. FERRELL
Discussed

Title 6. Banks and Trust Companies

 
Cite
Name
Level

 
6 O.S. 2001, 
Definitions
Cited

 
6 O.S. 2001.1, 
Oklahoma State Credit Union Board - Creation
Cited

 
6 O.S. 2006, 
Succession - Powers
Cited

 
6 O.S. 2007, 
Membership - Central Credit Unions
Cited

 
6 O.S. 2023, 
Exercising Power of Federally Chartered Credit Union - Exceptions
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA